Opinion filed August 1, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00036-CV
_____

## IN THE INTEREST OF J.A.L. AND M.N.L., CHILDREN

### On Appeal from the 358th District Court
### Ector County, Texas
### Trial Court Cause No. D-3106-PC

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and father of J.A.L. and M.N.L. Both parents filed a notice of appeal. We affirm.

In a single issue on appeal, the children's father challenges the legal and factual sufficiency of the evidence to show endangerment, abandonment, noncompliance with a court order, and best interest. The mother presents two issues in which she asserts that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of the children. Although not presented as an "issue," the mother also

challenges the legal and factual sufficiency of the evidence to support the trial court's findings regarding endangering conditions, endangering conduct, and compliance with a court order.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-

child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the father had committed four of the acts listed in Section 161.001(1): those found in subsections (D), (E), (N), and (O). The trial court found that the mother had committed three of the acts listed in Section 161.001(1): those found in subsections (D), (E), and (O). Specifically, the trial court found that both parents had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; that the parents had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; that the father had constructively abandoned the children, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and (1) the Department or authorized agency had made reasonable efforts to return the children to the father, (2) the father had not regularly visited or maintained significant contact with the children, and (3) the father had demonstrated an inability to provide the children with a safe environment; and that both parents had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children, who had been in the managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of each parent's parental rights would be in the best interest of the children.

The record shows that J.A.L. and M.N.L. were removed from their parents on October 12, 2011, when J.A.L. was four years old and M.N.L. was two years old.  The Department removed the children due to physical abuse to both children; the parents had severely disciplined the children.  At the time of removal, M.N.L. had a big bruise on her lower back that was fading, and J.A.L. had bruising on his upper thighs and legs, around his genital area, and on his penis.  J.A.L.'s injuries were caused by the father beating J.A.L. with a belt.  The record indicates that this type of beating occurred more than once.

The evidence shows that the father beat the children with a belt.  The father stated that the mother also used excessive discipline with the children, including spankings with a belt that left bruises on them.  During counseling with Teresa Volaro, a licensed professional counselor, the mother denied physically abusing the children; she only admitted to calling them stupid and yelling at them.  The mother did tell the counselor that she did not intervene when the father was hitting the children with the belt "because her mother always hit her with a belt and she was afraid she would get hit with the belt, too."  J.A.L. screamed when he saw the belt.

Volaro testified that marital problems between the parents were ongoing at the time of the final hearing.  The parents were not able to handle stressors in an appropriate manner, and evidence was presented showing that domestic violence had occurred between the parents and in the presence of the children.  Two weeks before the hearing, the parents got into a loud argument while they were in Volaro's office for a counseling session.  The father had told Volaro throughout the counseling sessions that "it would be a big mistake to bring the children home right now because of the situation with him and [the mother]."  In a session two weeks before the final hearing in this case, the father admitted that "there has not been a change."  Volaro could not recommend that the children go back to live with the

parents in that environment of hostility. She would fear for the physical and emotional safety of the children if they were returned to their parents.

Jenna Clark, a licensed professional counselor, conducted a psychosocial assessment of the parents. She testified that domestic violence or abuse that occurs between parents in the presence of small children is dangerous to those children and "terribly detrimental to the children's emotional growth." Clark also testified that hitting children in the face or spanking young children to the point of having bruises on their legs and buttocks is excessive and abusive. The attachment issue caused by a parent's physical abuse is a deep issue that affects all relationships with significant adults in the children's lives.

The Department's conservatorship worker, Michelle Franco, testified that the mother had performed some of the required services but that she had not complied with the service plan because she failed to complete Project ADAM as ordered. Franco also testified that the father completed some of the required services but that he failed to comply with the service plan; he did not attend all of the therapy that was required, did not obtain financial counseling, and did not maintain stable employment. The father had nine different jobs during the time period from removal to the final hearing.

According to Franco, the children were disruptive after their visits with the mother. Over the course of the case, J.A.L. wet himself, had temper tantrums, and was very bossy after the parents visited. The children changed in a positive manner when the parents missed their visits. Overall the children are happy and content and behaving well in their current situation. They have a safe home. The Department recommended that the parental rights of the mother and father be terminated and that the children be adopted by their foster parents. According to Franco, the foster parents would like to adopt J.A.L. and M.N.L. Franco testified that she thought it would be in the best interest of the children to terminate the

parents' rights. She stated that the parents "have not shown any kind of improvement since the beginning of the case." Franco was concerned that the physical abuse would recur because the parents had not changed despite the services offered to them.

The father testified that he was a changed person and asked the court to return the children to him and the mother. At trial, the mother testified that, on two occasions, she spanked the children with a belt but did not leave marks or bruises. The mother admitted to screaming at the children and agreed that she allowed the father to spank the children and to regularly deny the children of anything to drink. She also stated that the domestic violence between her and the father often resulted in the father getting mad and taking it out on the children. The mother testified that she and the father had learned in counseling how to properly deal with stressors.

We hold that there was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that both parents engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. In addition to the severe physical abuse of J.A.L., there was evidence of domestic violence between the parents. Both constitute conduct that endangered the children. To support termination under Section 161.001(1)(E), the offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265. The evidence is legally sufficient to support the trial court's finding as to each parent under Section 161.001(1)(E). Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the parents' remaining arguments regarding the sufficiency of the

6

evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of both the father's and the mother's parental rights would be in the best interest of J.A.L. and M.N.L. *See Holley*, 544 S.W.2d at 371–72. We cannot hold that the findings as to best interest are not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the findings that termination of the father's and the mother's parental rights is in the best interest of the children. The father's sole issue and both of the mother's issues are overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT

CHIEF JUSTICE


August 1, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

7